BILL LOCKYER Attorney General SUSAN DUNCAN LEE Deputy Attorney General
THE HONORABLE GREGORY D. TOTTEN, DISTRICT ATTORNEY, COUNTY OF VENTURA, has requested an opinion on the following question:
May a private security firm, pursuant to a contract with a property owner, immobilize a vehicle that is impermissibly parked in a private parking lot by affixing a "boot" device to the vehicle?
 CONCLUSION
A private security firm, acting pursuant to a contract with a property owner, may not immobilize a vehicle that is impermissibly parked in a private parking lot by affixing a "boot" device to the vehicle.
 ANALYSIS
Scarcity of convenient parking spaces is a familiar source of frustration for many drivers and property owners in cities and towns throughout California. The frustration may become particularly acute in the case of a business that maintains free off-street parking spaces for the use of its customers and clients, such as a medical facility, restaurant, or theatre, or for an apartment complex or condominium development that maintains free parking spaces for the use of its residents and their visitors. When available parking spaces in an area are limited in number, drivers sometimes use these "free" parking spaces on private property even when they are not patronizing the business in question or visiting a resident in the development. Unauthorized parking imposes a burden both on the owners of the parking lots and on their customers and visitors.
The question presented for resolution is whether a private security firm, pursuant to a contract with a property owner, may immobilize a vehicle that is impermissibly parked in a private parking lot by affixing a "boot" device[1] to the vehicle. We conclude that a private security firm may not do so.
Vehicle Code section 10852[2] provides:
 "No person shall either individually or in association with one or more other persons, wilfully injure or tamper with any vehicle or the contents thereof or break or remove any part of a vehicle without the consent of the owner."
We believe that placing a "boot" on a vehicle's wheel in order to immobilize the vehicle would constitute "tampering" for purposes of section 10852. In People v. Anderson (1975)15 Cal.3d 806, 810, the Supreme Court interpreted the scope of section 10852 as follows:
 ". . . An accepted definition of `tamper' is to `interfere with.' (Webster's New World Dict. (2d College ed. 1974).) Interference includes conduct which is broader in scope than merely damaging a vehicle, for it encompasses any act inconsistent with the ownership thereof. . . ."
Immobilizing a vehicle with a "boot" would be inconsistent with the vehicle owner's use and enjoyment of the vehicle; thus, it would be prohibited under the general terms of section 10852.[3]
Significantly, the Legislature has enacted several statutes to provide a legal means for preventing the impermissible parking of vehicles on private property. (See People v. PKS, Inc., supra, 26 Cal.App.4th at pp. 406-407; People v. James (1981)122 Cal.App.3d 25, 36-38; United Stanford Employees v. Board of Trustees (1977)67 Cal.App.3d 319, 323.) Section 22658, subdivision (a), states:
 "Except as provided in Section 22658.2, the owner or person in lawful possession of any private property, within one hour of notifying, by telephone or, if impractical, by the most expeditious means available, the local traffic law enforcement agency, may cause the removal of a vehicle parked on the property to the nearest public garage under any of the following circumstances:
 "(1) There is displayed, in plain view at all entrances to the property, a sign not less than 17 by 22 inches in size, with lettering not less than one inch in height, prohibiting public parking and indicating that vehicles will be removed at the owner's expense, and containing the telephone number of the local traffic law enforcement agency. The sign may also indicate that a citation may also be issued for the violation.
 "(2) The vehicle has been issued a notice of parking violation, and 96 hours have elapsed since the issuance of that notice.
 "(3) The vehicle is on private property and lacks an engine, transmission, wheels, tires, doors, windshield, or any other major part or equipment necessary to operate safely on the highways, the owner or person in lawful possession of the private property has notified the local traffic law enforcement agency, and 24 hours have elapsed since that notification.
 "(4) The lot or parcel upon which the vehicle is parked is improved with a single-family dwelling."
Section 22658.2 provides:
 "(a) Except as provided in subdivision (b), an `association,' as defined in subdivision (a) of Section 1351 of the Civil Code, of a common interest development, as defined in subdivision (c) of Section 1351 of the Civil Code, may cause the removal of a vehicle parked on that property to the nearest public garage if all of the following requirements are satisfied:
 "(1) A sign not less than 17 by 22 inches in size with lettering not less than one inch in height appears at each entrance to the common interest development and contains both of the following:
 "(A) A statement that public parking is prohibited and all vehicles not authorized to park on the common interest development will be removed at the owner's expense.
 "(B) The telephone number of the local traffic law enforcement agency. The sign may also indicate that a citation may be issued for the violation.
 "(2) If the identity of the registered owner of the vehicle is known or readily ascertainable, the president of the association or his or her designee shall, within a reasonable time, notify the owner of the removal by first-class mail. If the identity of the owner of the vehicle is not known or ascertainable, the president of the association or his or her designee shall comply with subdivision (c) of Section 22853.
 "(3) The president of the association or his or her designee, gives or causes to be given, notice of the removal to the local traffic law enforcement agency immediately after the vehicle has been removed. The notice shall include a description of the vehicle, the license plate number, and the address from where the vehicle was removed.
 "(b) The association may cause the removal without notice of any vehicle parked in a marked fire lane, within 15 feet of a fire hydrant, in a parking space designated for handicapped without proper authority, or in a manner which interferes with any entrance to, or exit from, the common interest development or any separate interest contained therein.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
Section 22952 additionally provides:
 "Every person engaged in the operation of off-street parking facilities is guilty of a violation, who:
 "(a) Tows or removes or authorizes the towing and removal of any vehicle within 24 hours of the expiration of the period for which a particular fee is charged. This subdivision shall not affect or limit any parking lot operator from charging parking fees in accordance with his posted schedule for the additional time such vehicle is parked.
 "(b) Tows or removes or authorizes the towing and removal of any vehicle when such parking facilities are held open for public use and there was no attendant on duty or other facilities permitting the patron to pay or remit the parking charges at the time such vehicle was first parked. This subdivision shall not affect or limit any parking lot operator from charging parking fees in accordance with his posted schedule for the time such vehicle is parked."
Finally, section 22953 states:
 "(a) Every owner or person in lawful possession of any private property which is held open to the public, or a discernible portion thereof, for parking of vehicles at no fee, shall not tow or remove, or cause the towing or removal, of any vehicle within one hour of the vehicle being parked.
 "(b) Notwithstanding subdivision (a), a vehicle may be removed immediately after being illegally parked within 15 feet of a fire hydrant, in a fire lane, or in a parking space or stall legally designated for disabled persons.
 "(c) Subdivision (a) does not apply to property designated for parking at an apartment complex, or to property designated for parking at a hotel or motel where the parking stalls or spaces are clearly marked for a specific room."
Accordingly, the Legislature has expressly authorized the towing of a vehicle that is impermissibly parked on private property.
In only one instance has the Legislature authorized immobilizing an impermissibly parked vehicle. Section 22651.7 provides:
 "In addition to, or as an alternative to, removal, any peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, or any regularly employed and salaried employee who is engaged in directing traffic or enforcing parking laws and regulations, of a jurisdiction in which a vehicle is located may immobilize the vehicle with a device designed and manufactured for the immobilization of vehicles, on a highway or any public lands located within the territorial limits in which the officer or employee may act if the vehicle is found upon a highway or any public lands and it is known to have been issued five or more notices of parking violations which are delinquent because the owner or person in control of the vehicle has not responded to the agency responsible for processing notices of parking violation within 21 calendar days of notice of citation issuance or citation issuance or 14 calendar days of the mailing of a notice of delinquent parking violation, or the registered owner of the vehicle is known to have been issued five or more notices for failure to pay or failure to appear in court for traffic violations for which no certificate has been issued by the magistrate or clerk of the court hearing the case showing that the case has been adjudicated or concerning which the registered owner's record has not been cleared pursuant to Chapter 6 (commencing with Section 41500) of Division 17. The vehicle may be immobilized until that person furnishes to the immobilizing law enforcement agency all of the following:
"(a) Evidence of his or her identity.
"(b) An address within this state at which he or she can be located.
 "(c) Satisfactory evidence that the full amount of parking penalties has been deposited for all notices of parking violation issued for the vehicle and any vehicles registered to the registered owner of the immobilized vehicle and that bail has been deposited for all traffic violations of the registered owner that have not been cleared. The requirements in subdivision (c) shall be fully enforced by the immobilizing law enforcement agency on and after the time that the Department of Motor Vehicles is able to provide access to the necessary records. A notice of parking violation issued to the vehicle shall be accompanied by a warning that repeated violations may result in the impounding or immobilization of the vehicle. In lieu of furnishing satisfactory evidence that the full amount of parking penalties or bail, or both, have been deposited that person may demand to be taken without unnecessary delay before a magistrate, for traffic offenses, or a hearing examiner, for parking offenses, within the county in which the offenses charged are alleged to have been committed and who has jurisdiction of the offenses and is nearest or most accessible with reference to the place where the vehicle is immobilized. Evidence of current registration shall be produced after a vehicle has been immobilized or, at the discretion of the immobilizing law enforcement agency, a notice to appear for violation of subdivision (a) of Section 4000 shall be issued to that person."
It is readily apparent that a private security firm, pursuant to a contract with a property owner, is not allowed under the terms of section 22651.7 to immobilize a vehicle impermissibly parked in a private parking lot. The statute requires, among other conditions, that a "peace officer" immobilize the vehicle parked "on a highway or any public lands."[4]
The Legislature's authorizations for towing and immobilizing parked vehicles constitute "exceptions" to the more general "tampering" prohibition of section 10852. (See Code Civ. Proc., §1859 ["where a general and particular provision are inconsistent, the latter is paramount to the former"]; Woods v. Young (1991)53 Cal.3d 315, 325 ["`specific provision relating to a particular subject will govern a general provision'"].) Since the Vehicle Code does not authorize the placement of a "boot" on a vehicle parked in a private parking lot, the general prohibition of section 10852 would be applicable to such "tampering."
We conclude that a private security firm, pursuant to a contract with a property owner, may not immobilize a vehicle that is impermissibly parked in a private parking lot by affixing a "boot" device to the vehicle.[5]
[1] A "boot," or "Denver boot," is a large metal clamp that attaches to a vehicle's wheel, preventing the vehicle from being driven. (See Saukstelis v. City of Chicago (7th Cir. 1991)932 F.2d 1171, 1172.)
[2] All references hereafter to the Vehicle Code are by section number only.
[3] Although "the consent of the owner" prevents the application of section 10852's prohibition, we do not believe that a sign placed at the entrance to a parking lot describing the consequences of placing a "boot" on an impermissibly parked vehicle would constitute a vehicle owner's "consent" to immobilizing his or her vehicle as described on the sign. (See Wright v. County of Sonoma (1909) 156 Cal. 475, 477-478 [taking water from well did not establish "acceptance" or "consent" to payment for the water as specified on posted sign]; Sorg v. Fred Weisz Associates (1970) 14 Cal.App.3d 78, 81-82 [use of property "did not constitute acceptance of the price named by the owners" for such use specified in letter]; Russell v. Union Oil Co. (1970) 7 Cal.App.3d 110, 114-115 [use of property did not constitute "assent or consent" to payment terms for such use contained in letter]; Sherman v. Associated Telephone Co. (1950)100 Cal.App.2d 806, 807-808 [use of property for telephone lines did not establish agreement to pay sum for such use specified in letter]; Pacific States Corporation v. Arnold (1914)23 Cal.App. 672, 674-675 [use of property did not establish "assent" to terms of rent for such use specified in letter].)
[4] "`"In the grants [of powers] and in the regulation of the mode of exercise, there is an implied negative; an implication that no other than the expressly granted power passes by the grant; that is to be recognized only in the prescribed mode. . . ."'" (Wildlife Alive v. Chickering (1976) 18 Cal.3d 190, 196; see People v. Zamora (1980) 28 Cal.3d 88, 98; In re Fain (1983)145 Cal.App.3d 540, 550; 85 Ops.Cal.Atty.Gen. 181, 185 (2002); 57 Ops.Cal.Atty.Gen. 307, 310 (1974).)
[5] Because of the conclusion reached, we need not address an additional question concerning the collection of a fee by the private security firm to remove the "boot."